## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PAUL H. WILL, #447357**                              **CIVIL ACTION**

**VERSUS**                                                        **NO. 06-2007**

**BURL CAIN, WARDEN**                               **SECTION "C"**
**LOUISIANA PENITENTIARY**

### ORDER AND REASONS

Before this Court is a petition for habeas corpus relief by Mr. Paul H. Will pursuant to

28 U.S.C. § 2254.  As grounds for relief, petitioner claims that his due process and fair trial

rights were violated when: 1) there was insufficient evidence to convict him of the charged

offense; and 2) he received ineffective assistance of counsel.

Upon a thorough review of the trial, direct appeal, and post-conviction records, the

habeas petition and memoranda, and applicable law, the Court has determined that petitioner's

claim of insufficient evidence to sustain the verdict is without merit, but that petitioner is entitled

to an opportunity to accept a pretrial tendered plea agreement that was not, in fact,

communicated to him.   For the reasons set forth below, the habeas petition is **PARTIALLY**

**DENIED** and **PARTIALLY GRANTED**.

## I.    Background and Procedural History

Petitioner is a state prisoner at Louisiana State Penitentiary in Angola.[1]   Petitioner filed

this federal application for habeas corpus on April 4, 2006.[2]

The following relevant facts are edited from the opinion issued by the Louisiana Fifth

Circuit Court of Appeal:

> At trial, Nicole Madere testified that, on July 24, 2000, she... drove into the
> Lakeside Shopping Center parking lot facing Veterans Highway. Madere noticed a
> man, later identified as defendant, Paul Will, walking towards the right side of her
> car... As she was getting ready to open the door, Will was standing in front of her
> pointing a gun at her. Will told Madere to "scoot over," and she complied. Will
> then got into the driver's side of the car, turned the engine on, and started driving...
> Madere asked Will to let her off at the gas station... Will told her "No," that she was
> just going to go for a ride, and that he did not want to take her away from her....
>
> Will and Madere first made a stop at a gas station in Mississippi... Will
> used her ATM card to get gas... When they stopped at the next gas station, she
> exited the car and Will followed her to the restroom... There was no one else in the
> store at that point... Madere did not feel at any point between the first two stops
> that she had the opportunity to escape. Early on in the trip, before they were getting
> ready to pull in somewhere or stop, Will expressed concerns that she might run
> away, and asked her if he needed to put her in the trunk. She told him "No" and that
> she would do whatever he asked of her. Madere testified that the whole time she
> thought that "something really bad was going to happen..." Will asked Madere if
> she had any questions for him. She asked him where they were going, and he told
> her they were going to Philadelphia.
>
> Madere stated that she never felt like she was safe, and wondered why he
> would keep her alive after he had told her what he was going to do... Madere was
> afraid to get to Philadelphia because she knew that was the end of the trip, and that
> he was not going to let her go. They listened to the radio during the drive... to a talk
> show that was discussing sex in a vulgar manner. Madere did not attempt to change
> the station because she was scared and did not want to make Will angry. Will asked
> her if she had had sex, and if she was wearing underwear. Madere got "very, very
> nervous," believing that Will was going to rape her...
>
> At no point during the trip did Madere feel as though she had the
> opportunity to escape. She testified that she went on this trip because Will had a
> gun. When they arrived in Philadelphia... he pulled down one of the streets and
> stopped the car... and gave her her cell phone. He told her to call her mom and
> dad... She got out of the car and started running. She thought he was going to shoot
> her. She tried to call her mom and dad, but she could not dial the right number. She

---

[1] Fed. Rec. Doc. 3, Petition for Writ of Habeas Corpus, *Will v. Cain*, No. 06-2007.
[2] *Id.*

never looked back. Miss Madere testified that she was crying hysterically at that point... The trip with defendant lasted approximately 19 hours...

Will testified that... he earned his living by being a musician and a cook, that he started using drugs when he was 20 years old, and that he was a heroin and drug addict. Will testified that, after his uncle's death...he wanted to go back to Philadelphia to commit suicide because that was where his family was... He promised not to hurt her and that he would let her go as soon as he got to where he was going... Will testified that he knew Miss Madere was scared, and that he told her "hundreds" of times that he would not harm her...

Will admitted they were listening to a radio show where a man, who was pretending to be the DJ's father, asked sexual-type questions. Defendant explained that he in turn asked Miss Madere those questions. He testified that he did not do that to frighten her... Will did not recall threatening to put Miss Madere in the trunk. Will testified that he never even touched her...

He went... to North Philadelphia to... buy enough heroin so he could overdose and die. Will did not have enough money at that time... He went to two ATMs... Will got arrested at the second ATM... Will testified that he told the officers he wanted to write two letters, one to his mom and one to Madere. The officers allowed him to do that. After that, defendant willingly gave a statement...

Will further testified that he had never been arrested, and that he had never hurt anybody. He explained that he did not realize at the time how traumatic the incident was for Miss Madere, but that he realized it now... He claimed that he did not ever demand anything from Miss Madere in order to let her go... Defendant testified that he could not get to Philadelphia without Madere because he knew she would have called the police.[3]

On July 27, 2001, the jury found him guilty as charged. Petitioner was sentenced to life in prison without benefit of parole.[4]   On December 6, 2002, an evidentiary hearing was held pursuant to the appellate court's order to stay petitioner's appeal while his case was remanded to the trial court for an evidentiary hearing on an alleged plea agreement.[5]  On October 28, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[6] The Louisiana Supreme Court denied writs on March 26, 2004.[7]   Petitioner filed an application for post-conviction relief which was denied by the trial court on March 8, 2005.[8]  The Louisiana

---

[3] *State v. Will*, 860 So.2d 140, 141-46 (La. App. 5 Cir. 2003).
[4] State Rec. Vol. 1, p.62.
[5] State Rec. Vol. 3, p. 197-243, Transcript of Evidentiary Hearing, December 6, 2002.
[6] *State v. Will*, 860 So.2d 140 (La. App. 5 Cir. 2003).
[7] State Rec. Vol. 1, *State v. Will*, 03-3224 (La. 3/26/04), 871 So.2d 345.
[8] State Rec. Vol. 5, tab 3, 00-4845, *State v. Will*, March 8, 2005.

Fifth Circuit Court of Appeal denied writs on June 27, 2005,[9] and the Louisiana Supreme Court denied writs on February 17, 2006.[10] Petitioner then filed his federal application for habeas corpus on April 4, 2006.[11]

## II.    Jurisdiction

Jurisdiction is proper under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the petitioner is "in custody" under the conviction he is attacking.[12] Petitioner Will is confined at the Louisiana State Penitentiary in Angola, therefore jurisdiction is proper.

## III.    Venue

Venue is proper under AEDPA in the district where the inmate is in custody or where the state court conviction and sentence were obtained.[13] Petitioner Will was convicted and sentenced in Jefferson Parish, therefore venue in the Eastern District of Louisiana is proper.

## IV.    Timeliness

The state submits that the petition is timely, and after reviewing the record this Court agrees. Generally speaking, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a petitioner bring his Section 2254 claims within one year of the date on which his conviction became final.[14] Pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's one-year limitation period for seeking federal habeas corpus relief commenced running on the date the judgment "became final by the conclusion of direct review or the expiration of the time for

---

[9] State Rec. Vol. 5, tab 4, 05-KH-529, *State v. Will*, June 27, 2005.
[10] State Rec. Vol 6, 2005-KP-1960, *State v. Will*, February 17, 2006.
[11] Fed. Rec. Doc. 3, Petition for Writ of Habeas Corpus, *Will v. Cain*, No. 06-2007.
[12] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).
[13] 28 U.S.C. § 2241(d).
[14] 28 U.S.C. § 2244(d).

seeking such review." Petitioner's direct appeal was denied by the Supreme Court of Louisiana on March 26, 2004 and he did not appeal to the United States Court Supreme Court. Petitioner's conviction became final ninety days after the Supreme Court of Louisiana denied his application for supervisory writs, on June 24, 2004.

On this date, the one-year statute of limitations for filing a federal habeas corpus petition began to run.[15]  AEDPA's statute of limitations is tolled for the period during which a properly filed application for post conviction relief or other collateral review attacking a conviction or sentence is pending in state court.[16]  Petitioner filed a post-conviction application on February 28, 2005, or 245 days later.  The statute was tolled until February 17, 2006, when the Louisiana Supreme Court denied writs. Petitioner filed his federal habeas petition on April 4, 2006, 43 days later. A total of 288 days of the 365-day period elapsed prior to petitioner's habeas petition.

For the reasons stated above, the Court finds that Mr. Will's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is timely.

## V.   Exhaustion

Petitioner has exhausted available state remedies as required by AEDPA.  Under AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief from the federal courts.[17]  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[18]  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal habeas petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.[19]

---

[15] See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).
[16] See *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2).
[17] 28 U.S.C. § 2254(b)(1)(A).
[18] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).
[19] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Petitioner presents two claims for review in his petition as listed above. Both were raised in his application for writs of certiorari to the Louisiana Supreme Court on his direct appeal or in his application for post conviction relief. Accordingly, petitioner has satisfied AEDPA's exhaustion requirement. Therefore, the Court will address petitioner's claims on the merits.

## VI.    Standard of Review

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law.[20] Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).[21] As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[22] The United States Supreme Court has noted the following:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable,

---

[20] 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[21] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[22] 28 U.S.C. § 2254(d)(1).

and we stressed in *Williams v. Taylor*, 529 U.S. 362 (2002) that an unreasonable application is different from an incorrect one.[23]

As to questions of fact, factual findings are presumed to be correct, and a federal court will give great deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[24]

## VII.    Law & Analysis

**(1) Petitioner argues that his due process and fair trial rights were violated when he there was insufficient evidence to convict him.**

A claim of insufficiency of the evidence is reviewed by a habeas court under the *Jackson* standard.[25]   It is a fundamental principle of American jurisprudence that a criminal defendant may not be convicted absent a finding of guilt beyond a reasonable doubt by the finder of fact.[26] However, a jury's findings on an issue of fact will be upset only where necessary to preserve the "fundamental protection of due process of law." [27]

In reviewing a claim of insufficient evidence, this Court must determine whether, looking at the elements of the offense, and viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[28]   This Court's review of factual determinations is limited where petitioner had a full and fair opportunity to litigate the factual issue(s).[29]   Petitioner's complaint is that he was charged with and convicted for aggravated kidnapping, a violation of *Louisiana Revised*

---

[23] *Bell v. Cone*, 535 U.S. 685, 694 (2002), internal citations omitted.
[24] 28 U.S.C. § 2254(d)(2); see also *Hill v. Johnson*, 210 F.3d 481, 485; 28 U.S.C. § 2254(e)(1).
[25] *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).
[26] *Jackson*, 443 U.S. at 316-17, 99 S.Ct. at 2787-88, 61 L. Ed. 2d 560.
[27] *Jackson* at 319, 99 S.Ct. at 2789, 61 L. Ed. 2d 560.
[28] *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000).
[29] See 28 U.S.C. § 2254(d), requiring a general presumption of correctness as to factual findings.

Statute § 14:44,[30] without sufficient evidence, when the evidence allegedly supported a

conviction only for the statutorily provided responsive verdict of second degree kidnapping, a

violation of *Louisiana Revised Statute § 14:44.1*.[31]  Specifically at issue is petitioner's argument

that he lacked the intent to extort anything of value from the victim in order to secure her

release.[32]

This claim was raised on appeal and in petitioner's application for post-conviction relief.
On appeal, the Louisiana Fifth Circuit Court of Appeal found that:

> [T]he State sufficiently established all the elements necessary to prove
> aggravated kidnapping. Will does not dispute that he forcibly seized and carried
> the victim from one place to another, thus satisfying the first two elements of the
> aggravated kidnapping statute. The State established the third element with proof
> defendant intended to force the victim to drive with him to Philadelphia. As was
> indicated in *Roblow, supra*, the phrase "anything of apparent present or
> prospective value" includes transportation.
>     The clear implication of Will's behavior was that Madere would be
> released only if she submitted to all of his demands. Thus, we find sufficient
> evidence of the fourth element.
>     Will pointed a gun at Miss Madere and forced her to drive with him to
> Philadelphia.  She asked to be released before they got onto the interstate;

---

[30] Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or
some other person, to give up anything of apparent present or prospective value, or to grant any advantage or
immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without
benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:44.

[31] A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
 (1) Used as a shield or hostage;  (2) Used to facilitate the commission of a felony or the flight after an attempt to commit or
the commission of a felony;  (3) Physically injured or sexually abused; (4) Imprisoned or kidnapped for seventy-two or
more hours, except as provided in R.S. 14:45(A)(4) or (5); or (5) Imprisoned or kidnapped when the offender is armed with
a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or (2) The enticing or persuading of
any person to go from one place to another; or (3) The imprisoning or forcible secreting of any person.
C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five
nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation,
or suspension of sentence. LSA-R.S. 14:44.1.

[32] (2) "Anything of value" must be given the broadest possible construction, including any conceivable thing of the
slightest value, movable or immovable, corporeal or incorporeal, public or private, and including transportation,
telephone and telegraph services, or any other service available for hire. It must be construed in the broad popular
sense of the phrase, not necessarily as synonymous with the traditional legal term "property."... LSA-R.S. 14:2.

however, he told her, "No," and that he would release her when he got to where
he was going. Will asked Madere if he needed to lock her in the trunk to prevent
her from escaping. He told her how individuals had stolen money from him and
that he intended to take revenge on them. This caused Madere to believe that
Will was going to eventually kill her because she knew too much information.
Will led Madere to believe that he had the gun in his front sweatshirt pocket
during the entire trip. He questioned her regarding sexual matters, leading Madere
to believe she was going to be raped. Will began conversing with individuals at
one of the gas stations, which led Madere to believe that a group of people were
in on the plan to abduct her.

All of these incidents caused Madere to fear defendant. In light of Will's
behavior, Madere reasonably believed she would not be released safely unless she
drove with defendant to Philadelphia, used her debit card to pay for gas and food,
and did not try to escape. Although Will did not expressly communicate to the
victim that she would have to surrender her debit card and travel with him to
Philadelphia in order to be released, Madere understandably perceived that her
freedom was conditioned upon compliance with his demands.

After a review of the record we find that, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have found
the essential elements of the crime of aggravated kidnapping were proven beyond
a reasonable doubt.[33]

Petitioner had a full and fair opportunity to litigate this issue. Before trial, it was argued

in a pre-trial motion to quash,[34] where the judge found that it was a matter of fact for the jury to

decide.[35] During an *in limine* motion heard just before trial, the judge again determined it to be a

fact issue for the jury.[36] The defense requested a special jury instruction, which stated in

pertinent part, "The crime of aggravated kidnapping is limited to cases of kidnapping for

ransom."[37] At trial, the defense attempted to establish that petitioner was admittedly and only

guilty of second degree kidnapping.[38] The jury unanimously found the petitioner guilty of

---

[33] *State v. Will,* 860 So.2d 140, 150 (La. App. 5 Cir. 2003).
[34] State Rec. Vol. 1, p. 70, Transcript of Motion to Quash Hearing, March 16, 2001.
[35] *Id.*
[36] State Rec. Vol. 1, p. 82, Transcript of Hearing on Memorandum, July 25, 2001; see also Vol. 4, p.33, In Limine Motion and Pre-Trial Memorandum.
[37] State Rec. Vol. 4, p. 33. The Court notes this jury instruction request was denied.
[38] State Rec. Vol. 2, Trial Transcript, testimony of petitioner, p. 204-60.

aggravated kidnapping.[39]  The defense again argued for second degree kidnapping during a post-verdict motion for a responsive verdict.[40]

This Court does not have the prerogative to evaluate the evidence *de novo* but is constrained to give deference to the findings of the original jury and to the state courts reviewing the verdict.  The Court notes that the state court judge who presided over the trial indicated he might well have reached a different verdict had he been the trier of fact, but likewise recognized he must give deference to the jury's decision.[41]   While this Court concludes that a lesser verdict of second degree kidnapping was supported by the evidence[42], the jury's conclusion that the more serious offense of aggravated kidnapping occurred is also sufficiently supported as to warrant being upheld.   Petitioner admitted forcibly seizing and carrying the victim from one place to another. While the petitioner testified that he told her many times he would release her in Philadelphia, the victim testified that she believed she would not be released unless she complied with petitioner's orders, which were given while he was armed with a gun, to relinquish control of her car; to accompany him on a 19-hour drive to Philadelphia; to not attempt any escape; and to provide money for gas and food using her ATM card.  The Court notes that the victim was not only abducted, but she was transported further and further from her home as the hours went by,  justifying an increasing sense of helplessness and acquiescence in order to have any hope of safe release.  The Court finds that, viewing the evidence in a light most favorable to the prosecution, a reasonable trier of fact could find that the elements of aggravated kidnapping were proved beyond a reasonable doubt.

---

[39] State Rec. Vol. 2, Trial Transcript, p. 266-7.
[40] State Rec. Vol. 2, p. 274, Transcript of Hearing(s) on Motion for a Lesser Responsive Verdict, November 13, 2001, and p. 285, November 16, 2001.
[41] *Id.*, p. 286.
[42] Specifically, LSA-R.S. 13:44.1(1)(2) and (5).

The Court defers to the state court decision, finding nothing based on an unreasonable determination of the facts in light of the evidence presented at trial.

**(2) Petitioner argues that he received ineffective assistance of counsel for failure to convey an alleged plea bargain offer the state made.**

A claim of ineffective assistance of counsel is a mixed question of law and fact.[43] Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[44]

In *Strickland v. Washington,* the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.[45] A petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.[46]

Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[47] If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.[48]

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[49] "Counsel's

---

[43] *Moore v. Cockrell,* 313 F.3d 880, 881 (5th Cir. 2002), cert. denied, 538 U.S. 969, 123 S.Ct. 1768 (2003).
[44] 28 U.S.C. § 2254(d)(1).
[45] *Strickland v. Washington,* 466 U.S. 668 (1984).
[46] *Id.* at 697.
[47] *Jernigan v. Collins,* 980 F.2d 292, 296 (5th Cir. 1993); *Clark v. Johnson,* 227 F.3d 273, 284 (5th Cir. 2000).
[48] *Strickland v. Washington,* 466 U.S. 668, 697 (1984).
[49] *Styron v. Johnson,* 262 F .3d 438, 450 (5th Cir.2001), cert. denied 534 U.S. 1163 (2002).

performance is deficient if it falls below an objective standard of reasonableness."[50]  Petitioner

must overcome a strong presumption that the counsel's conduct falls within a wide range of

reasonable representation.[51]

The Petitioner raised ineffective assistance in his application for post conviction relief,

claiming deficient performance because counsel failed to relay an alleged plea bargain offer

from the state.  The district court denied the ineffective assistance claims, and writs were denied

by the Fifth Circuit Court of Appeal and the Louisiana Supreme Court.  In his habeas petition

petitioner argues the identical issue.

The relevant facts are as follows.  A minute entry of June 18, 2001, notes that the

defendant had refused a plea offer.[52]  However, the transcript of that hearing indicates that what

the defense attorney actually said was, "[W]e were in touch with the District Attorney's Office

up until Thursday to determine whether or not this matter could be resolved by a plea. It was

determined that it could not be..."[53]  There is no indication at that juncture that a plea offer was

actually made or that it was relayed to the defendant and refused.

The petitioner was convicted as charged on July 27, 2001.  The following day, in an

article published in the New Orleans *Times Picayune*, the victim and her family were quoted as

"wonder[ing)]why Will, who has no previous criminal record, didn't accept the 20-year sentence

that was offered to him in a plea agreement last month."[54]  The petitioner apparently contacted

---

[50] *Little v. Johnson,* 162 F.3d 855, 860 (5th Cir. 1998).

[51] *Crockett v. McCotter,* 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King,* 751 F.2d 1432, 1441 (5th Cir. 1985).

[52] The Court notes that a reference to the alleged plea bargain is contained in a minute entry dated June 18, 2001, where the court granted a continuance. The disputed entry states: "The Defendant has refused any plea offer..."

[53] State Rec. Vol. 6, No. 00-4845, Transcript of Proceedings, June 18, 2001. See also Vol. 6, Exhibit C, p.7 for the minute entry.

[54] The petitioner refers to a July 28, 2001 article in the New Orleans Times-Picayune; see Fed. Rec. Doc. 3, Petition for Writ of Habeas Corpus, *Will v. Cain,* No. 06-2007, exhibit S. The article stated that the victim's family wondered why the petitioner had not accepted the 20-year plea bargain that was offered to him.

his attorney thereafter to ask about the supposed plea offer.   Defense counsel then wrote a letter to the prosecuting attorney which stated in part:

> I saw in one of the (news) articles where the Maderes claim that Paul had turned down a plea offer for 20 years.  As you are aware, no such offer was ever made.  After talking with the Maderes you called me and told me that the decision was made by the District Attorney's Office to proceed to prosecute the case as an aggravated kidnapping.  You did mention in passing that you thought the Maderes would like to see Paul do 20 or 30 years in jail, but that was never presented as an offer.
>
> I do not mean to suggest that if it had been an offer it would have been one that I would have recommended as being reasonable, or one that my client would have considered acceptable. However, it would have been an offer which I would have been ethically bound to convey to my client.  I therefore would appreciate it if you would confirm to me in writing that at the time of our conversation you told me that the District Attorney's Office had determined to proceed with the case as an aggravated kidnapping.[55]

The prosecutor did not respond to the letter.[56]

The petitioner received an evidentiary hearing on this issue during his direct appeal.[57]

At the hearing,  the following testimony was elicited from defense counsel.

> Q.  Did you ever convey to Paul Will any discussions of a term of years that the District Attorney's Office would be content with?"
> A.  No.  I was never given any term of years by the D.A.'s office.
> Q.  Did you ever decline any – Did you ever tell the D.A.'s office that your client wouldn't take more than a certain number of years?
> A.  No.  There were discussions in which I had recommended a certain number of years that I would recommend to my client.  I never told them he wouldn't take anything other than that but in the negotiations I did try to tell them that I thought I could recommend to him a certain amount.
> Q.  Do you remember what that was?
> A.  It was ten years.
>
>        *    *    *    *
>
> Q.  Did you ever get to the point where you did make such a recommendation to your client?

---

[55]State Rec. Vol. 2, Letter of Julian Murray to Assistant District Attorney Cornelius Regan, Aug. 2, 2001.
[56]Fed. Rec. Doc. 3, Exh. 5, p. 8, 11-12.
[57]Fed. Rec. Doc. 3, Exh. R.

A. No, because the D.A.'s Office refused. They said they were going to go with the aggravated kidnapping so there was nothing to discuss. It was mandatory life.[58]

The petitioner likewise testified at the evidentiary hearing and not surprisingly confirmed that his counsel never advised him on any plea offer from the state.[59]   The prosecutor involved likewise testified at the evidentiary hearing.

A. We brought the family in. We had a conversation with the family. We wanted to find out because there was some question as to whether or not Paul Will would plead to a lesser charge. We wanted to get a figure that the family felt they would be comfortable with in order to go forward with any type of plea. We brought the family in. We asked them to consider a time frame or a time period that they would feel comfortable with and their response to us was, 20 to 30 years.

Q. Did you convey that to (defense counsel)?

A. (Defense counsel) and I had had several conversations and as best as I can recall he called me and during the course of one of our conversations I said the parent or the family would be interested in a plea from anywhere from 20 to 30 years. And at that time I was informed that the client couldn't do anything more than three to five years.

* * * * *

Q. ...did the State of Louisiana ever offer Mr. Will a plea agreement?

A. No... No, at that particular time it seemed like we were poles apart. The family wanted 20 to 30 and it was our impression that he was going to do or he would be willing to do anywhere from three to five so we never went any further and said,   okay, – We'll let him plea to three to five.

* * * * *

Q. In order to let him receive a sentence of 20 to 25 years you would have had to reduce the charges; is that correct?

A. That's correct.

Q. And weren't  willing to reduce the charges not knowing whether or not Mr. Will was willing to take the –

A. We weren't going to reduce the charge unless we knew that he was going to plead and accept 20 to 30 years.[60]

---

[58] Fed. Rec. Doc. 3, Exh. R., p. 7-8.

[59] Id, p. 14-15.

[60] Id, p. 11-13.

In ruling against the petitioner after the evidentiary hearing, the trial judge made the following factual and legal findings:

> In the instant case, defendant claims that counsel failed to advise him that a plea agreement to second degree kidnapping was offered by the State. A review of defendant's records indicate that he knowingly entered a plea of not guilty. Further, defendant has not met his burden in proving that he involuntarily entered a plea of not guilty. Further, defendant claim relate to strategic choices made by his counsel at the time of the defendant's trial. The defendant's claims are essentially with his counsel's decisions regarding defendant's plea at trial. This is considered trial tactics for purposes of evaluating the performance of defendant's counsel. Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics and under the *Strickland* test, the defendant has failed to meet the two-prong test.[61]

The petitioner framed this claim as an ineffective assistance of counsel claim based on his attorney's failure to advise him of a plea offer of 20 to 30 years imprisonment on a reduced charge. The trial judge was faced with two inconsistent versions of the plea discussions. According to defense counsel, no plea offer was tendered by the prosecutor and in fact he was told that the District Attorney's Office was going forward with the aggravating kidnapping charge which carried a mandatory life sentence. Defense counsel also denied telling the prosecutor that his client would refuse any particular number of years. The prosecutor, on the other hand, testified that he conveyed the family's willingness to accept a plea to 20 to 30 years but that defense counsel told him his client wouldn't take any more than three to five years. The prosecutor indicated he was in fact willing to reduce the charge but only with the assurance that the petitioner would plead to 20 to 30 years. When defense counsel told him that his client would do no more than three to five, that ended the discussion.

The trial court apparently made the factual finding that a plea offer of 20 to 30 years was in fact tendered, but rebuffed by defense counsel and without being conveyed to the

---

[61] State Rec. Vol. 5, Order of March 8, 2005. 24th JDC, Parish of Jefferson.

petitioner.   This finding that a plea offer was in fact made is supported by the prosecutor's testimony.[62]   In his reasons for judgment, the trial judge described the petitioner's claim as relating to "strategic choices made by his counsel".... "counsel's decisions regarding the defendant's plea at trial"... "trial tactics for purposes of evaluating the performance of defendant's counsel."[63]   Had the trial judge accepted defense counsel's version, that no plea offer was even made, that would have ended the discussion.   By couching his decision in terms of defense counsel's "strategic choices" and "trial tactics" he necessarily found that a plea offer was in fact made, consistent with the prosecutor's testimony, but was not conveyed due to the "strategic choices" and "trial tactics" of defense counsel.

As already noted, under 28 U.S.C. §2254(d)(2),  factual findings by the trial judge are presumed to be correct and entitled to great deference unless they are "unreasonable" in light of the evidence presented in the state court proceedings.[64]   Both versions of the plea discussions were plausible.   The trial judge in this case accepted the prosecutor's version of the events as the correct one,  and rejected the version presented by defense counsel.   The trial judge was not "unreasonable" in making his choice.

Under 28 U.S.C. §2254(d)(1), a federal court must defer to a state court's decision regarding mixed questions of law and fact unless the decision "was contrary to, or involved an

---

[62] As noted, the prosecutor brought the family in and discussed what they would be comfortable with, which was 20 to 30 years, and conveyed that to defense counsel. Also, when specifically asked if a plea agreement was offered, the prosecutor initially said no but immediately clarified that in light of his impression that the defendant would not accept more than a sentence of three to five years,  "we never went any further..."  Fed. Rec. Doc. 3, Exh. R, p. 12. Finally, the prosecutor chose not to respond to defense counsel's later letter asking  "to confirm to me in writing" that no plea was offered and in fact counsel was told they were going forward with the case as charged. This silence indicates that from the prosecutor's standpoint, a plea offer was in fact tendered but rejected by counsel.

[63] The state trial court also made a finding that the defendant knowingly entered a plea of not guilty and had not shown the not guilty plea was involuntary. However, the petitioner raised no issue regarding his original plea. The only not guilty plea entered by the petitioner was to the original charge of aggravated kidnapping, which is not at issue. He did not have the opportunity to enter a not guilty plea to a lesser charge, and indeed, as noted in the first part of this decision, the entire defense was based on the argument that he was guilty of second degree kidnapping but not aggravated kidnapping.

[64] 28 U.S.C. § 2254(d)(2); see also *Hill v. Johnson*, 210 F.3d 481, 485; 28 U.S.C. § 2254(e)(1).

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   In this instance, the trial court's conclusion that the failure to convey a plea offer can be construed as a "strategic choice" or a "trial tactics" is an unreasonable application of clearly established Federal law.

The state trial court was correct, in that "[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."[65]   At the same time, trial tactic or strategy can be the basis for a constitutionally ineffective assistance of counsel claim if "it is so ill chosen that it permeates the entire trial with obvious unfairness."[66]

It is impossible to conceive of any valid trial tactic or strategy that would justify a defense counsel failing to relay a plea offer to a defendant from the prosecution.   Indeed, defense counsel here stated in his unanswered letter to the prosecution, " I do not mean to suggest that if it had been an offer it would have been one that I would have recommended as being reasonable, or one that my client would have considered acceptable. However, it would have been an offer which I would have been ethically bound to convey to my client."[67]

This lack of any strategic or tactical justification for failing to relay a plea offer is particularly true in a case like this where the thrust of the defense at trial was not actual innocence, but rather guilt of a lesser included offense. The prosecution's plea agreement offer was to reduce the charge to the lesser included offense in exchange for the plea. No conceivable strategy would justify failing to relay that plea offer to the defendant.

---

[65] *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002), quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999); see also *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993), where "[g]iven the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."

[66] *Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir. 2005), citing *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005).

[67] This Court again notes it is bound by 28 U.S.C. 2254(d)(2) to accept the state trial court's factual finding that the prosecution's version of the plea discussions is the correct one, rather than the defense counsel's version.

Prior to *Strickland*, at least two courts held that failure to advise a client of a plea bargain constituted ineffective assistance of counsel. See *Beckam v. Wainwright*, 639 F.2d 262, 267 (5th Cir.1981), holding that an attorney need not "obtain defendant's consent to every trial decision," but where the issue is whether to advise the client to plead or not "the attorney has the duty to advise the defendant of the available options and possible consequences" and failure to do so constitutes ineffective assistance of counsel); and *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438  (3rd Cir.1982),"[t]he decision to reject a plea bargain offer ... is a decision for the accused to make ... a failure of counsel to advise his client of a plea bargain ... constitute[s] a gross deviation from accepted professional standards." *Id.* at 438 (citations omitted).

The Supreme Court has extended the *Strickland* standards to ineffectiveness of counsel claims arising out of plea bargaining matters. See *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), "We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." Under *Strickland*, defense counsel has the 'dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.' *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2052.  This is to guarantee that the defendant has the final say in "mak(ing) certain fundamental decisions regarding the case, *as to whether to plead guilty*, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed. 2d 987 (1983), emphasis added.

A  number of federal courts have cited *Strickland* in concluding that  failure by trial counsel to inform a client of a government plea offer amounts to ineffective assistance of counsel. See *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995), stating that "...we agree that failing to inform the defendant of a plea offer could amount to ineffective assistance of counsel;"

*U.S. v. Gordon,* 156 F.3d 376, 380 (C.A.2 (N.Y.)1998), finding: "'[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case ... [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision.'" [citations omitted]; *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir.), cert. denied, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986), where "in the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the sixth and fourteenth amendments;" *United States v. Rodriguez*, 929 F.2d 747, 753 (1st Cir.1991), stating "there is authority which suggests that a failure by defense counsel to inform defendant of a plea offer can constitute ineffective assistance of counsel on grounds of incompetence alone, even absent any allegations of conflict of interest," and *id* at FN 1, "We note in this regard that the fact that a defendant, after rejecting a guilty plea, still receives all the constitutional protections of trial does not preclude an attack on sixth amendment grounds if counsel's performance during plea bargaining fell below 'the range of competence demanded of attorneys in criminal cases.' *Strickland*, *supra*, 466 U.S. at 687, 104 S.Ct. at 2074;" *Cullen v. United States*, 194 F.3d 401, 404 (2nd Cir. 1999), where "...counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution;" *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir.1988), vacated on other grounds, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989), reinstated,  726 F.Supp. 1113 (M.D.Tenn.1989), aff'd, 940 F.2d 1000 (6th Cir.1991), cert. denied, 502 U.S. 1050, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992), where "incompetent advice to reject a plea offer can constitute a Sixth Amendment violation;" and *Gluzman v. U.S.*, 124 F. Supp. 2d 171 (S.D.N.Y. 2000), where counsel's failure to communicate a plea offer or to provide adequate advice about a plea offer to the defendant would constitute

substandard performance, for purposes of an ineffective assistance of counsel claim. *U.S. Const.*
*Amend. VI.*

In  *United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994), the 9th Circuit cited
Turner, above, and added:

> If an attorney's incompetent advice regarding a plea bargain falls below
> reasonable standards of professional conduct, *a fortiori,* failure even to inform
> defendant of the plea offer does so as well.
>
> In addition, under the *Strickland* test, a court deciding whether an
> attorney's performance fell below reasonable professional standards can look to
> the ABA standards for guidance. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065.
> The ABA Standards of Criminal Justice provide in relevant part,
>
> "Defense counsel should conclude a plea agreement only with the consent
> of the defendant, and should ensure that the decision whether to enter a plea of
> guilty or nolo contendere is ultimately made by the defendant." [FN2: ABA III,
> Standards of Criminal Justice, 14-3.2].
>
> The ABA criminal justice standards provide that the *conclusion* of a plea
> offer should ultimately be decided by the defendant. The use of the term
> "conclude" implies that the client's consent is needed whether the decision is to
> accept or reject a plea offer. While *Strickland* explicitly states that ABA standards
> "are only guides," *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065, the standards
> support the conclusion that, accepting Blaylock's allegations as true, defense
> counsel's conduct fell below reasonable standards.
>
> Based on both the ABA standards and the law of the other circuits, we
> hold that an attorney's failure to communicate the government's plea offer to his
> client constitutes unreasonable conduct under prevailing professional standards.

Finally, in *Shiwlochan v. Portuondo*, 345 F.Supp. 2d 242, 260 (E.D. N.Y. 2004), the
court found:

> In contrast to other claims of ineffective assistance of counsel where
> counsel's conduct may implicate strategic decisions, counsel is absolutely
> obligated to convey both the fact and terms of the plea offer and provide some
> advice regarding this "crucial decision." [citations omitted]

Under *Strickland*, to prevail on the deficiency prong, petitioner must demonstrate that
counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth
Amendment.[68] "Counsel's performance is deficient if it falls below an objective standard of

---

[68] *Styron v. Johnson*, 262 F .3d 438, 450 (5th Cir. 2001), cert. denied, 534 U.S. 1163 (2002).

reasonableness."[69]  For the reasons stated above,  the failure of defense counsel to relay the plea

offer of the prosecutor fell below an objective standard of reasonableness and likewise failed to

meet the constitutional minimum guaranteed by the Sixth Amendment.  The *Strickland* prong  of

deficient performance is established.

      To prove prejudice, a petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."[70]

A reasonable probability is one "sufficient to undermine confidence in the outcome."[71]

      With respect to errors that impact sentencing, the Fifth Circuit has held that a defendant

"must demonstrate a reasonable probability that, but for his counsel's actions, he would have

received a 'significantly less harsh' sentence." *U.S. v. Grammas*, 376 F.3d 433, 439 (C.A.5

(Tex.) 2004), quoting *United States v. Ridgeway*, 321 F.3d 512, 515 (5th Cir. 2003); see also

*Teague v. Scott*, 60 F.3d 1167, 1172 (C.A.5 1995): where "under the *Strickland* test, the

defendant must show that there was a reasonable probability that his counsel's errors resulted in a

sentence that was significantly more severe."

> One of the most important duties of an attorney representing a criminal
> defendant is advising the defendant about whether he should plead guilty. An
> attorney fulfills this obligation by informing the defendant about the relevant
> circumstances and the likely consequences of a plea. Apprising a defendant about
> his exposure under the sentencing guidelines is necessarily part of this process. A
> defendant cannot make an intelligent choice about whether to accept a plea offer
> unless he fully understands the risks of proceeding to trial. 'Failing to properly
> advise the defendant of the maximum sentence that he could receive falls below
> the objective standard required by *Strickland.* "

*U.S. v. Herrera*, 412 F.3d 577, 580 (C.A.5 (Tex.) 2005), citations omitted. In this case,

the petitioner was convicted of  aggravated kidnapping which carried a mandatory life sentence

---

[69] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).
[70] *Strickland*, 466 U.S. at 694.
[71] *Id.*

in prison.  His defense was not that he was innocent but that he was guilty of the lesser included

offense of second degree kidnapping.  The plea offer was to the reduced charge of second degree

kidnapping, which carried a penalty of five to forty years imprisonment, at least two of which to

be served without benefit of probation, parole or suspension of sentence. *La. R.S. 14:44.1.*  The

petitioner was 28 years old at the time of trial.[72]  The life sentence he received was "significantly

more severe" than the offer range of 20 to 30 years.  *Teague, supra*, at 1172.  As to whether he

would have accepted the plea offer, when petitioner was asked at the evidentiary hearing if he

had formulated in his mind what he believed was a reasonable sentence that he would have been

willing to enter a guilty plea to,  he responded:  "Anything better than dying on the river."[73]

The Court finds that "but for his counsel's actions... [petitioner] would have received a

'significantly less harsh' sentence." *U.S. v. Grammas*, 376 F.3d at 439.   Therefore, the prejudice

prong of *Strickland* has been met as well.


## VIII.   Remedy

The final issue is fashioning on appropriate remedy.  "Cases involving Sixth Amendment

deprivations are subject to the general rule that remedies should be tailored to the injury suffered

from the constitutional violation and should not unnecessarily infringe on competing interests."

*United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667-668, 66 L.Ed. 2d 564 (1981).

Since the error here occurred pretrial, rather than at trial, ordering a new trial is not necessary.

Instead, the remedy for counsel's ineffective assistance should put the defendant back in the

position he would have been in if the Sixth Amendment violation had not occurred.  *United*

*States v. Blaylock*, 20 F.3d 1458, 1468 (9th Cir. 1993).   The appropriate remedy, therefore, is to

---

[72] Fed. Rec. Doc. 3, Exh. K.

[73] Fed. Rec. Doc. 3, Exh. R, p. 28.  The Louisiana State Penitentiary, where petitioner is housed, is located on the Mississippi River.

reinstate the original plea offer. *Id.* See also *Hoffman v. Arave*, 455 F.3d 926, 942 (9th Cir. 2006), stating "Where a defendant is deprived of the opportunity to make a reasoned decision about a proffered plea agreement, the proper remedy is reinstatement of the offer of the plea agreement;" *Nunes v. Mueller*, 350 F.3d 1045, 1056-57 (9th Cir. 2003), finding defense counsel constitutionally ineffective for failing to accurately relay the plea offer to the defendant and ordering defendant released within 120 days unless the state offered the defendant the same material terms of the original plea offer; *Satterlee v. Wolfenbarger*, 453 F.3d 362, 365 (6th Cir. 2006), finding defense counsel constitutionally ineffective for failing to advise the defendant of a favorable plea offer and ordering defendant released within 60 days unless the state reinstated the plea offer; and *Shiwlochan v. Portuondo*, 345 F.Supp. 2d 242, 264 (E.D. N.Y. 2004): "Under the circumstances, the only remedy to make petitioner whole would be resentencing according to the terms petitioner would have received had be been informed of and accepted the plea offer."

Requiring the government to reinstate its original plea offer is constitutionally permissible. See *Mabry v. Johnson,* 467 U.S. 504, 510, n. 11, 104 S.Ct. 2543, 2548, n. 11, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed. 2d 427 (1991).

## IX..   Conclusion

For the above reasons, **IT IS ORDERED** that the conviction and sentence of petitioner **PAUL WILL** petition be and hereby are vacated. It is **FURTHER ORDERED** that the petitioner shall be released from custody within 90 days unless the state offers the defendant the

same material terms of the plea offer, tendered prior to the original trial. The state shall notify

the defense and the Court of its intention within 30 days of this ruling.

HELEN G. BERRIGAN
U.S DISTRICT JUDGE